IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK BOWMAN, | ) |
| Plaintiff, | ) Civil Action No. 2: 20-cv-00135 |
| vs. | ) |
| | ) Chief United States Magistrate Judge |
| JOHN E. WETZEL, Secretary of Corrections of the Commonwealth of Pennsylvania, in official and individual capacity; and MELINDA ADAMS, Superintendent of SCI-Mercer, in her official and individual capacity, | ) Cynthia Reed Eddy |
| Defendants. | ) |

### MEMORANDUM OPINION[1]

Plaintiff Mark Bowman brings this civil rights action under 42 U.S.C. § 1983, raising claims under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. These claims arise out of his confinement for approximately 295 days in the Restricted Housing Unit ("RHU") at the State Correctional Institution at Mercer, Pennsylvania ("SCI-Mercer"). Named as Defendants are John Wetzel, the Secretary of Pennsylvania Department of Corrections ("DOC") and SCI-Mercer Superintendent Melinda Adams.

Pending before the Court is Defendants' motion to dismiss the Complaint. (ECF No. 7). For the reasons below, the motion will be granted in part and denied in part.

### I. Procedural History

Plaintiff commenced this action by filing a Complaint on January 29, 2020. (ECF No. 1). In Count I of the Complaint, Plaintiff alleges that his indefinite confinement in the RHU constituted cruel and unusual punishment in violation of the Eighth Amendment. In Count II, Plaintiff claims

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), all parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings here, including trial and entry of final judgment. *See* ECF Nos. 11 and 12.

1

that his confinement without an explanation, a hearing or an opportunity for review, as well as Defendants' failure to transport him to preliminary hearings, violated his due process rights under the Fourth, Fifth, and Fourteenth Amendments. And in Count III, Plaintiff claims that Defendants failure to deliver to him correspondence from his attorney, public officials and other individuals and to send out his correspondence violated his due process rights under the Fifth and Fourteenth Amendments. Together with monetary damages, Plaintiff seeks injunctive and declaratory relief, attorneys' fees, and other relief.

Defendants have filed this motion to dismiss for failure to state a claim, with brief in support, (ECF Nos. 7 and 8), to which Plaintiff has responded in opposition. (ECF No. 13). The matter is ripe for disposition.

## II. Standard of Review

The Supreme Court has issued two decisions that pertain to the standard of review for failure to state a claim upon which relief could be granted. The Supreme Court held that a complaint must include factual allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008). In determining whether a plaintiff has met this standard, a court must reject legal conclusions unsupported by factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" "labels and conclusions;" and " 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 678 (citations omitted). Mere "possibilities" of misconduct are insufficient. *Id*. at 679. The Court of Appeals has summarized the inquiry as follows:

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1947, 173 L.Ed.2d 868 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 1950. Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

### III. Factual Background

In 2014, Plaintiff was charged with theft in Ohio. He pled guilty and was placed on four years probation. He eventually relocated from Ohio to Grove City, Pennsylvania. His probation was transferred from Columbiana County, Ohio, to the Board of Probation and Parole in Mercer County, Pennsylvania. (Compl. ¶¶ 16-18).

On August 20, 2018, Plaintiff was arrested in Venango County on Identity Theft charges, arraigned, and released on his own recognizance. That day, Plaintiff received a call from his probation officer asking him to come into the probation office the next day. When Plaintiff arrived at the probation office, he was arrested for an alleged probation violation and transported directly to SCI-Mercer. (*Id*., ¶¶ 23-25).

Upon his arrival at SCI-Mercer, he was placed in a Security Level 5 cell in the Restrictive Housing Unit ("RHU"), which is also known as "Administrative Custody," "solitary confinement," or "the hole." Plaintiff was not allowed to make a phone call for approximately four days, was not informed how long he would be incarcerated, and was not informed of any court or hearing dates related to the charges against him or his incarceration. (*Id*., ¶¶ 26 - 28). He notes that according to the Inmate Handbook, inmates are suppose to receive a written explanation of the reason for

administrative custody within 24 hours of such placement and have a hearing within seven days of such placement as well as a right to appeal. (*Id*. ¶¶ 29-35).

In September 2018, Plaintiff was transported to Venango County Courthouse.  He was not informed as to the nature of the September proceedings, but received a list of court dates in November and December.  He was never afforded a preliminary hearing on the underlying Venango County charge.  And, he was never afforded a hearing, nor was he ever notified that such a hearing was scheduled in Columbiana County, Ohio, to determine whether there was probable cause to believe that Plaintiff had violated the terms of his Ohio probation.  Plaintiff remained in "the hole" at SCI-Mercer for approximately five months, until he was transported on January 22, 2019, back to the Venango County Jail. He remained in the county jail for approximately one week.  Apparently a Pretrial Conference had been scheduled for January 22, 2019, which he did not attend and for which he received no notice. (*Id*. ¶¶ 36-43).

Shortly thereafter, Plaintiff was transferred back to SCI-Mercer, where he was again placed in solitary confinement.  On June 2 or 3, 2019, Plaintiff was transported back to Venango County Jail, and on that day pled guilty to the identity theft charges.   Plaintiff's counsel called Columbiana County, Ohio, to determine the status of Plaintiff's probation.  Counsel was informed that six separate hearings had been scheduled in Ohio regarding Plaintiff's probation, and the charge against him had been finally dropped.  Plaintiff had not been notified of any of the Ohio hearings.  (*Id.,*  ¶¶ 48-60). Plaintiff was returned to SCI-Mercer, where he remained for another ten days before being released. (*Id*., § 64).

Plaintiff was incarcerated in solitary confinement for approximately 295 days.  He alleges that while he was incarcerated in solitary confinement, correctional officers periodically ransacked his cell, often destroying his personal notes.  (*Id*., § 66).

4

Plaintiff asserts that as a result of his long incarceration, he lost his business and his marriage ended in divorce. During his incarceration in solitary confinement, Plaintiff was isolated from any meaningful human contact. His isolation caused him to experience severe depression and anxiety, and multiple episodes of suicidal ideation. Plaintiff has been diagnosed with Posttraumatic Stress Disorder, Severe Depression, Anxiety, and Panic Disorder. (Compl. ¶¶74-78.)

### IV. Discussion

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver,* 510 U.S. 266, 271 (1994).

Plaintiff alleges violations of his Eighth Amendment right to be free from cruel and unusual punishment and of his due process rights under the Fourth, Fifth, and Fourteenth Amendments. Each of Plaintiff's claims will be addressed below.

A. Plaintiff's Eighth Amendment Claim (Count I)

In Count I, Plaintiff alleges that Defendants' act of incarcerating him indefinitely in the RHU constituted cruel and unusual punishment in violation of the Eighth Amendment.[2] Defendants

---

[2] Defendants argue that Plaintiff's confinement was not "indefinite" because his confinement would and did end after resolution of his alleged parole violation. Defs' Br. at 9. (ECF No. 8).

5

contend that this allegation does not rise to the level of an Eighth Amendment claim because Plaintiff was not deprived of basic human needs such as food, clothing, shelter, sanitation, medical care or personal safety. Plaintiff responds that "courts have begun to recognize a 'growing consensus' about the 'extremely serious and potentially dire consequences of lengthy exposure to the conditions of solitary confinement." Pl's Br. at 13 (citing *Curtis v. Wetzel*, 763 F. App'x 259, 265 (3d Cir. 2019)(citing *Palakovik v. Wetzel*, 854 F.3d 209, 226-65 (3d Cir. 2017)).

The Court of Appeals for the Third Circuit has held that "the Eighth Amendment's Cruel and Unusual Punishments Clause does not apply until 'after sentence and conviction'." *Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005) ("*Hubbard I*") (footnote omitted) (quoting *Graham*, 490 U.S. at 392 n.6)). *See also Murray v. Keen*, 763 F. App'x 253, 255 (3d Cir. Feb. 20, 2019) ("sentenced prisoners are protected only from punishment that is 'cruel and unusual' while pretrial detainees are protected from any punishment" (citing *Hubbard I*, 399 F.3d at 166-67)). Thus, while the parties have not addressed it, a threshold issue that must be addressed is Plaintiff's status while incarcerated.

Our appellate court has held that individuals remain pretrial detainees until such time as they are sentenced. *See Stevenson v. Carroll*, 495 F.3d 62, 67 (3d Cir. 2007). Although the Complaint does not explicitly reference Plaintiff's status, his brief in opposition to the motion to dismiss asserts that he was a pretrial detainee. *See* ECF No. 13 at 6 ("Plaintiff, a pretrial detainee, was presumed innocent of the charges against him, and had not been accused of any prison infractions."). According to the facts alleged in the Complaint, he had been arrested but not yet tried, convicted or sentenced

---

Plaintiff responds that after he was taken into custody, "he was placed in solitary confinement without any explanation other than that it was due to his status as an [accused] out of state parole violator, and without any review of his confinement." Pl's resp. at 7. ECF No. 13). Further, his "confinement was undefined for the vast majority of its duration." *Id.*

6

when he was sent to SCI-Mercer and then confined in the RHU. Thus, for purposes of this analysis, the Court concludes that at the time of the events at issue, Plaintiff was a pretrial detainee.[3]

Because Plaintiff was a pretrial detainee, his claims must be made and addressed under the Fourteenth Amendment's due process clause, not the Eighth Amendment's cruel and unusual punishments clause. Plaintiff has therefore failed to state an Eighth Amendment claim and Count I will be dismissed.

B. Plaintiff's Due Process Claims (Count II)

In Count II of the Complaint, Plaintiff alleges that he has been deprived of his due process rights under the Fourth, Fifth, and Fourteenth Amendments.

1. *Fourth and Fifth Amendment Claims*

The Fourth Amendment prohibits unreasonable searches and seizures. Plaintiff argues that "his arrest and incarceration constituted an unreasonable seizure under the Fourth Amendment because the duration and character of the seizure – indefinite detention in solitary confinement for the better part of a year – were manifestly unreasonable." (ECF No. 13 at 8). But Plaintiff does not allege that Secretary Wetzel or Superintendent Adams had any involvement in his arrest or the decision to detain him in prison prior to trial, and he cites no authority that would support his claim that his detention in SCI-Mercer constituted a "seizure" under the Fourth Amendment.[4] Moreover, while it is possible, as Defendants suggest, that Plaintiff's claim may be based upon the searches of his prison cell as referenced in his Complaint, the Supreme Court has held that "the Fourth Amendment has no

---

[3]    If either party disputes Plaintiff's status as a pretrial detainee, they may file a motion to reconsider this issue.

[4]    As will be explained below, the Court finds that Plaintiff's confinement in the RHU for approximately 295 days without explanation or an opportunity for review states claims for both substantive and procedural due process violations under the Fourteenth Amendment.

7

applicability to a prison cell." *Hudson v. Palmer*, 536 U.S. 517, 536 (1984). For these reasons, the Court finds that Plaintiff has not stated a claim under the Fourth Amendment.

Plaintiff also alleges that Defendants violated his rights under the due process clause of the Fifth Amendment. Defendants assert that the Fifth Amendment claim must be dismissed because this provision applies only to the federal government, not to the acts of state government or state officials. *Santos v. Secretary of D.H.S.*, 532 F. App'x 29, 33 (3d Cir. 2013) (citing *Citizens for Health v. Leavitt*, 428 F.3d 167, 178 n.11 (3d Cir. 2005)). The Court agrees. While Plaintiff cites *Curtis v. Wetzel*, 763 F. App'x 259, 265 (3d Cir. Feb. 13, 2019), which held that a prisoner could state a claim when he was transferred to the RHU as a consequence for failing to admit his offenses as a violation of his right against self-incrimination, it is inapplicable here. The claim in *Curtis* was brought under the Fifth Amendment's compulsion clause, not the due process clause.

Thus, Plaintiff's Fifth Amendment claim will be dismissed.

### 2. *Fourteenth Amendment Claims*

In Count II, Plaintiff also raises Fourteenth Amendment due process claims based on being confined to the RHU for approximately 295 days without the opportunity to review his placement in solitary confinement, Defendants' failure to transport him to preliminary hearings, and their failure to comply with internal prison policies. Defendants do not deny that the due process clause of the Fourteenth Amendment generally applies but contend that Plaintiff cannot state a claim based on the facts pleaded in this case.

#### a. *Substantive Due Process Claim*

The Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law." "The substantive component of the Due Process Clause limits what government may do regardless of the fairness of the procedures that it employs." *Boyanowski v.*

*Capital Area Intermediate Unit*, 215 F.3d 396, 399 (3d Cir. 2000).  This "guarantee[s] protect[ion] against government power arbitrarily and oppressively exercised." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

In *Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979), the Supreme Court established the principle that "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."  In determining what constitutes "punishment," the Court stated that "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment." *Id.* at 539.  In making the determination of whether a challenged condition of confinement amounts to a punishment of a pretrial detainee, " '[a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose'." *Hubbard v. Taylor*, 538 F.3d 229, 232 (3d Cir. 2008) ("*Hubbard II*") (quoting *Bell*, 441 U.S. at 538) "[C]onditions that are reasonably related to a penal institution's interest in maintaining jail security typically pass constitutional muster." *Bistrian v. Levi,* 696 F.3d 352, 373 (3d Cir. 2012) (citing *Bell*, 441 U.S. at 540).  In contrast, a "particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose." *Id*. (internal quotations and citations omitted); *see also Hubbard II*, 538 F.3d at 232.

The Court of Appeals has noted that unconstitutional punishment typically involves both objective and subjective components. *Stevenson*, 495 F.3d at 68.  The objective component requires an inquiry into whether the deprivation was sufficiently serious, and the subjective component asks whether the officials acted with a sufficiently culpable state of mind. *Id.* (citing *Wilson v. Seiter*, 501

9

U.S. 294, 298 (1991)).  As our appellate court observed, the Supreme Court in *Bell* allowed for an inference of mens rea where the restriction was arbitrary or purposeless, or where the restriction was excessive, even if it would accomplish a legitimate governmental objective.

Critically, the *Stevenson* court held that dismissal of the complaint by the district court at the motion to dismiss stage was improper because it could not make the required objective or subjective inquiries.  *Id*.  Similarly, at this stage, this Court cannot make the objective and subjective inquiries necessary to determine whether Plaintiff's confinement in the RHU—for which he claims that he was given no reason—amounted to "punishment."  *Cf. Steele v. Cicchi*, 855 F.3d 494, 505-06 (3d Cir. 2017) (record established that pretrial detainee was transferred to administrative segregation after prison received a credible claim that he was coercing other inmates to use a particular outside bail bonds service; therefore, his substantive due process claim to be free from punishment was dismissed on summary judgment).

Thus, the Court finds that Plaintiff has stated a claim that his substantive due process right to be free from punishment was violated.

Plaintiff also alleges that Defendants violated his due process rights by not transporting him to his preliminary hearings.  Defendants contend that he was transported from SCI-Mercer to the Venango County Jail on several occasions, but that "[t]he responsibility for transporting Plaintiff to his legal appointments would have rested with the Venango County Jail while he was in that entity's custody."  Defs' Br. at 14.  They also note that Plaintiff fails to plead that Defendants had adequate notice of his legal proceedings and refused to transport him or make him available for transportation. According to Defendants, "[t]he responsibility to transport incarcerated parties to court proceedings rests on counties and sheriffs, not upon the Pennsylvania Department of Corrections."  *Id*.   On the current state of the record, the Court cannot conclude whether the failure to transport Plaintiff was

solely the result of inadvertence, the fault of the transporting third parties, or whether there is any factual basis for a claim that the Defendants had some role in a deliberate and wrongful effort to preclude or delay Plaintiff's transport.  As a result, Defendants' motion to dismiss this aspect of Plaintiff's due process claim will be denied and this issue can be revisited once the record is complete.

### b. *Procedural Due Process Claim*

Plaintiff's RHU confinement also raises a procedural due process claim.  The Supreme Court has held that "[t]he core of due process is the right to notice and a meaningful opportunity to be heard." *LaChance v. Erickson*, 522 U.S. 262, 266 (1998).

In *Stevenson*, the Third Circuit held that "[a]lthough pretrial detainees do not have a liberty interest in being confined in the general prison population, they do have a liberty interest in not being detained indefinitely in the SHU without explanation or review of their confinement." 495 F.3d at 69. The quantity of process required for administrative transfers of pretrial detainees to the RHU need not be extensive: prison officials must provide "only an explanation of the reason for their transfer as well as an opportunity to respond." *Id*. at 70 (citing *Hewitt v. Helms*, 459 U.S. 460, 474 (1983)). Additional procedures are required when a prisoner is confined in the RHU for disciplinary reasons. *Id.*

Here, Plaintiff has alleged that he was never provided any reason for being placed in the RHU and was never provided an opportunity to respond.  For this reason, the Court finds that he has stated a claim for a violation of his right to procedural due process.  *See Stevenson,* 495 F.3d at 71 (at the motion to dismiss stage, it was not possible to discern whether the relationship between the detention in the RHU and a legitimate governmental purpose is reasonable).

Defendants argue that Plaintiff cannot base his claim on purported violations of Defendants' internal policies as set forth in the Inmate Handbook.  The Court agrees.  As many courts have held,

corrections officials cannot be held liable for failing to conform to procedures outlined in inmate handbooks and other internal prison procedures. *See Steele,* 855 F.3d at 508 (no standalone protected liberty interest in prison manual procedures); *Waldron v. Wetzel*, No . 20-0136, 2020 WL 3084082, at *6-7 (W.D. Pa. June 10, 2020) (no claim based on failure to follow DOC Inmate Handbook procedure); *McCrudden v. United States*, 2016 WL 1259965, at *4 (D.N.J. Mar. 31, 2016) (no right to sue for prison's alleged violation of inmate handbook); *Atwell v. Lavan*, 557 F. Supp. 2d 532, 556 n.24 (M.D. Pa. 2008) ("a prison policy manual does not have the force of law and does not rise to the level of a regulation") (citation omitted). Thus, to the extent Plaintiff bases his due process claim on violations of the Inmate Handbook, Defendants' motion to dismiss will be granted.

In summary, with respect to Count II, the motion to dismiss will be granted with respect to Plaintiff's claims based on violations of the Inmate Handbook and otherwise denied.

### C.  Plaintiff's Due Process Claims  (Count III)

In Count III, Plaintiff raises due process claims under the Fifth and Fourteenth Amendments alleging that Defendants failed to deliver his mail and in doing so violated his right to counsel under the Fifth Amendment. As explained above, the Fifth Amendment claim must be dismissed because this provision applies only to the federal government, not to the acts of state government or state officials. *Santos v. Secretary of D.H.S.*, 532 F. App'x 29, 33 (3d Cir. 2013) (citing *Citizens for Health v. Leavitt*, 428 F.3d 167, 178 n.11 (3d Cir. 2005)).

Defendants argue that Plaintiff cannot sustain a claim for Defendants' failure to deliver incoming and outgoing mail as "[t]here is no allegation that the Defendants were the responsible party for this alleged lapse in communication." Defs' Br. at 15. Plaintiff responds that the Defendants failed to both deliver incoming mailed addressed to him and failed to send outgoing  mail sent by him to his attorney and other individuals.

12

On the current state of the record, the Court cannot conclude that there is no factual basis for the claim that Defendants are responsible for the "mysterious disappearance of the mail." As a result, Defendants' motion to dismiss will be denied and this issue can be revisited once the record is complete.

### D. Injunctive and Declaratory Relief

Defendants argue that Plaintiff cannot obtain injunctive and declaratory relief because he is no longer incarcerated at SCI-Mercer or in any DOC facility. Courts have held that a prisoner lacks standing to seek injunctive relief if he is no longer subject to the alleged conditions he seeks to challenge. *See Weaver v. Wilcox*, 650 F.2d 22, 27 (3d Cir. 1981). In addition, a prisoner's release or transfer from the prison that was the location of the alleged violations moots any claims for injunctive and declaratory relief. *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003).

While Plaintiff asserts that his claims are "capable of repetition yet evading review," the Court cannot enjoin activity that is not ongoing based on the possibility that it might recur at some future time. "While there is a 'narrow exception' when a case presents a question capable of repetition yet evading review, Plaintiff does not meet this exception, as '[s]peculation that [Plaintiff] could return to prison does not overcome the mootness doctrine'." *Mayon v. Wetzel*, 2017 WL 1211626, at *3 (W.D. Pa. Apr. 3, 2017) (citing *Cobb v. Yost*, 342 F. App'x 858, 859 (3d Cir. 2009)). *See also Abdul-Akbar v. Watson*, 4 F.3d 195, 207 (3d Cir. 1993) ("Such conjecture [that the plaintiff would return to prison] as to the likelihood of repetition has no place in the application of this exceptional and narrow grant of judicial power.")

In support of his position, Plaintiff cites *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). In that case, however, the Supreme Court held that a defendant could not render a claim moot by ceasing its offending conduct after it was sued. This is not what occurred in this case. Plaintiff had

been released from the RHU when the case was filed.[5]  For that reason, with respect to Plaintiff's request for injunctive and declaratory relief, the motion to dismiss will be granted.

E. Compensatory Damages

Plaintiff requests compensatory damages in his claims for relief.  Defendants contend that under the Prison Litigation Reform Act ("PLRA"), he may not seek compensatory damages unless he has physical injuries.

The PLRA provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a showing of physical injury." 42 U.S.C. § 1997e(e).  *See Mitchell v. Horn*, 318 F.3d 523, 533 (3d Cir. 2003) (holding that the PLRA does not permit an inmate to recover Eighth Amendment compensatory damages for purely emotional trauma of fear of assault unaccompanied by any actual physical injury).

The definition of "prisoner" in the PLRA is "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h).  The Court of Appeals has observed that "every court of appeals to have considered the issue has held that the PLRA does not apply to actions filed by former prisoners." *Ahmed v. Dragovich,* 297 F.3d 201, 201 n.10 (3d Cir. 2002).

Neither the Complaint nor Plaintiff's brief in opposition to the motion reveal the date when Plaintiff was released from custody.  But his criminal docket, of which the Court may take judicial

---

[5] Plaintiff contends that "in the course of his confinement he was denied, among other things, access to counsel, and that Defendants failed to deliver both mail that he sent and mail that had been sent to him.  As such, Plaintiff was incapable of filing while suit while incarcerated in the conditions he complains of." Pl's Br. at 4.  Even accepting this argument as true, however, it does not affect the mootness of his requests for declaratory and injunctive relief after his release.

notice, indicates that he pled guilty on June 3, 2019, and was sentenced to probation on July 19, 2019. *See* public docket, *Commonwealth v. Bowman*, Docket No. CP-61-CR-000064002018, Court of Common Pleas of Venango County; https://ujsportal.pacourts.us/DocketSheets/CP.aspx.[6]

Thus, it appears that Plaintiff was not a "prisoner" when he filed the case and the restrictions of the PLRA—including the prohibition on recovery for mental or emotional injury suffered while in custody without a showing of physical injury—do not apply to him. Accordingly, Defendants' motion to dismiss Plaintiff's claim for compensatory damages will be denied.[7]

    5. Involvement of Secretary Wetzel

In order to be held liable in a civil rights action, a defendant must have personal involvement in the alleged wrongdoing. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Id*. *See also Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). Defendants move to dismiss all claims against Secretary Wetzel on the ground that Plaintiff has failed to allege his personal involvement in the events underlying the Complaint.

Plaintiff asserts two arguments in response. First, he contends that Secretary Wetzel's name and signature appear on the cover of the Inmate Handbook, showing his involvement in writing the policies in it. But Plaintiff cannot state a claim based on prison officials' failure to comply with provisions in the Inmate Handbook. Plaintiff also argues that his "placement in solitary confinement was apparently pursuant to official Department of Corrections policy, which is overseen by Defendant

---

[6]     The Complaint states that Plaintiff remained incarcerated in solitary confinement for another ten days after entering his guilty plea before finally being released. Complaint, at § 64. (ECF No. 1). It also appears from Paragraph 4 of the Complaint that Plaintiff was not in custody when the Complaint was filed. ("Plaintiff Mark Bowman is an adult individual residing at 609 Grove City Road, Apartment 10, Slippery Rock, Pennsylvania 16057 . . . .").

[7]     If either party disputes this finding, they may file a motion to reconsider on this issue.

Wetzel, and the failure to provide Plaintiff with any process to address his placement in solitary custody was part of a pattern of behavior on the part of the Department." (ECF No. 13 at 5.) That is, he is alleging that the prison had a "custom" of placing pretrial detainees who are accused of violating out-of-state probation in the RHU indefinitely and that Secretary Wetzel was aware of and condoned this custom. *See* Compl. at 10 (requesting a declaration that this policy violated Plaintiff's rights).

The Court of Appeals has held that "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted). In addition, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *Id.*

"Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Kniepp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996) (citation omitted). Customs are "practices of state officials . . . so permanent and well settled as to virtually constitute law." *Id*. (*quoting Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). In other words, a custom is "an act 'that has not been formally approved by an appropriate decisionmaker' but that is so widespread as to have the force of law." *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (quoting *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997)).

Thus, even if an official written "policy" appears to prohibit certain behavior, if a plaintiff can demonstrate that the behavior was tolerated and condoned by policy-making officials, municipal liability can be established. *See Huffman v. City of Prairie Village, Kan.,* 980 F. Supp. 1192, 1205

(D. Kan. 1997) (city had official policy prohibiting sexual harassment, but plaintiff presented evidence that this conduct was widespread in police department and that policy-making officials were aware of it).

Plaintiff has alleged that Secretary Wetzel, a policy-making official, was involved in the custom of placing certain pretrial detainees in the RHU. The Court finds that at this stage of the proceedings, these allegations are enough to state a claim.[8] Therefore, the motion to dismiss Secretary Wetzel will be denied.

### V. Conclusion

For these reasons, Defendants' motion to dismiss the Complaint will be granted in part and denied in part. The motion will be granted with respect to all claims brought under the Fourth, Fifth, and Eighth Amendments, and Plaintiff's claims for injunctive and declaratory relief. The motion will be denied with respect to Plaintiff's due process claims under the Fourteenth Amendment, claims against Secretary Wetzel, and Plaintiff's claims for compensatory damages. An appropriate order follows.

Dated:  June 16, 2020

BY THE COURT:

s/Cynthia Reed Eddy
Cynthia Reed Eddy
Chief United States Magistrate Judge

cc:   All Counsel of Record
      (via ECF electronic notification)

---

[8] It is not clear whether Secretary Wetzel had any involvement with the procedural due process aspect of Plaintiff's claim, that is, whether he directed SCI-Mercer to confine Plaintiff to the RHU indefinitely without providing a reason, a review or an opportunity to appeal, or even knew that this was occurring. However, the parties have not addressed the issue and the Court cannot resolve it at this time.