**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARK BOWMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2: 20-cv-00135 |
| | ) | |
| vs. | ) | |
| | ) | Chief United States Magistrate Judge |
| JOHN E. WETZEL, Secretary of Corrections | ) | Cynthia Reed Eddy |
| of the Commonwealth of Pennsylvania, in his | ) | |
| official and individual capacity; and | ) | |
| MELINDA ADAMS, Superintendent of SCI- | ) | |
| Mercer, in her official and individual | ) | |
| capacity, | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**[1]

Plaintiff, Mark Bowman, was formerly a prisoner in the custody of the Pennsylvania Department of Corrections (DOC) confined at SCI-Mercer. He brings this civil rights action challenging the constitutionality of his placement in the Restricted Housing Unit (RHU) for 295 days as out-of-state probation violator.

Currently pending before the Court are the parties' cross motions for summary judgment. (ECF Nos. 36 and 39). The motions are have been fully briefed[2] and are ripe for disposition. After careful consideration of the motions, the material in support and opposition thereto, the memoranda of the parties in support and opposition thereto, the relevant case law, and the record as a whole, the Court will grant in part and deny in part Defendants' Motions for Summary Judgment and deny Plaintiff's Motion for Summary Judgment.

---

[1]    In accordance with the provisions of 28 U.S.C. § 636(c)(1), all parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings here, including trial and entry of final judgment. *See* ECF Nos. 11 and 12.

[2]    *See* ECF Nos. 37, 38, 40, 41, 42, 43, 46, 47, and 48.

## II. Factual Background

In October of 2014, Plaintiff was charged with theft in the State of Ohio.  He pled guilty on April 17, 2015, and was sentenced on September 11, 2015, in the Court of Common Pleas of Columbiana County, Ohio, to four years of probation.  (ECF No. 46 at 4-5).  Upon his relocation from Ohio to Grove City, Pennsylvania, his probation was transferred to the Pennsylvania Board of Probation and Parole in Mercer County, Pennsylvania. Complaint, ¶¶ 16 – 18.

On August 20, 2018, Plaintiff was arrested in Venango County, Pennsylvania, on Identity Theft charges.  He was arraigned, and released on his own recognizance. Later that day, Plaintiff received a call from his probation officer asking him to come into the probation office the next day. Because of the new criminal charges, the State of Ohio had issued a detainer for his alleged probation violation and Plaintiff was arrested upon his arrival at the probation office. *See* Warrant to Commit and Detain (ECF No. 37-6 at 11), Notice  of Charges and Hearing (ECF No. 3706 at 12). He was transported directly from the probation office to SCI-Mercer. Complaint*, at ¶¶ 23 – 25; Body Receipt (ECF No. 37-6 at 9).

Upon his arrival at SCI-Mercer, Plaintiff was placed in a Security Level 5 cell in the RHU which is also known as "Administrative Custody," "solitary confinement," or "the hole."  Defendants dispute that Plaintiff was held in the RHU or that his confinement was entirely solitary.  According to Defendants, "Plaintiff was actually held in the Limited Privilege Housing Unit [LPHU], a form of Administrative Custody which is less restrictive than Restricted Housing Unit."  D's Br. at 5, n.2. Plaintiff in his deposition, however, testified that conditions in the LPHU were stark, that he was isolated from any meaningful human contact, that LPHU inmates could not go outside, and that there was no difference between the conditions in the RHU and LPHU. P's Depo. 36:13; 69:10-14; 71:1-3.

On September 5, 2019, Plaintiff was transported by the Franklin City Police Department to Venango County Courthouse to attend a preliminary hearing.  He met with is attorney, John Lacatos, Esquire, who told him that there were upcoming court dates in November and December. Plaintiff was returned to SCI-Mercer on September 6, 2018, and remained in "the hole" at SCI-Mercer for approximately five months, until he was transported back to Venango County on January 18, 2019, by the Venango County Sheriff's Department to attend "Call of the List."  (ECF No. 32 at 9).  On January 22, 2019, Plaintiff met with his defense attorney and with the assistant district attorney.  He returned to SCI-Mercer on January 25, 2019, where he was again placed in solitary confinement.

On June 3, 2019, Plaintiff was transported by the Venango County Sheriff's Department to Venango County to attend jury selection.  On that day, he pled guilty to the pending identity theft charges.   Prior to entering the plea, his counsel called Columbiana County, Ohio, to determine the status of Plaintiff's probation violation proceedings.  Counsel was informed that six probable cause hearings had been scheduled and the charge against Plaintiff had been dropped.  Plaintiff was returned to SCI-Mercer, where he remained for another ten days before being released in June 2019.  *Id*., ¶¶ 48, 64.

Plaintiff was incarcerated in solitary confinement for approximately 295 days.[3]  He asserts that as a result of his long incarceration, he lost his business and his marriage ended in divorce. During his incarceration in solitary confinement, Plaintiff was isolated from any meaningful human contact.[4]

---

[3]    There is a statement in Plaintiff's brief in opposition to Defendants' motion for summary judgment that Plaintiff was "incarcerated for approximately 185 days in solitary confinement," P's Br. at 6 (ECF No. 48); however, from the allegations of the Complaint and the other material in the record, it appears that Plaintiff was confined 295 days.

[4]    Defendants point out, and Plaintiff does not dispute, that his confinement was not entirely solitary as he had a cell mate for a total of six weeks during his confinement.  Ds' Stmt of Mat. Facts, ¶ 25 (ECF No. 46).

His isolation caused him to experience severe depression and anxiety, and multiple episodes of suicidal ideation. Plaintiff has been diagnosed with Posttraumatic Stress Disorder, Severe Depression, Anxiety, and Panic Disorder. Complaint, ¶¶74-78.

## II. Procedural History

Plaintiff commenced this action by filing a Complaint on January 29, 2020. He alleges that his constitutional rights were violated when he was held in a restrictive housing unit for approximately 295 days. Named as Defendants are John E. Wetzel, the former Secretary of the Department of Corrections, and Melinda Adams, the Superintendent of SCI-Mercer. Both defendants are sued in their individual and official capacities.

In lieu of filing an Answer, Defendants filed a motion to dismiss. (ECF No. 7). By Memorandum Opinion and Order filed on June 16, 2020, the Court granted in part and denied in part Defendants' motion. (ECF No. 14). Because of that ruling, the following claims remain in this case: (i) Fourteenth Amendment due process claims regarding Plaintiff's housing status; (ii) Fourteenth Amendment due process claims regarding lack of transportation to legal hearings; and (iii) Fourteenth Amendment due process claims regarding interference with mail. Discovery has now closed and the parties have filed cross motions for summary judgment.

## III. Standard of Review

The standard for assessing a Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure is well-settled. A court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby,*

*Inc.,* 477 U.S. 242, 248 (1986). Furthermore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 250.

On a motion for summary judgment, the facts and the inferences to be drawn therefrom should be viewed in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)). The moving party has the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. The party opposing the motion, however, cannot rely merely upon bare assertions, conclusory allegations, or suspicions to support its claim. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita,* 475 U.S. at 586, and must produce more than a "mere scintilla" of evidence to demonstrate a genuine issue of material fact. *See Big Apple BMW, Inc. v. BMW of North America, Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992).

Notably, these summary judgment rules do not apply any differently where there are cross-motions pending. *Lawrence v. City of Phila.,* 527 F.3d 299, 310 (3d Cir. 2008).   As stated by the Court of Appeals for the Third Circuit, " ' [c]ross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.' " *Id.* (quoting *Rains v. Cascade Indus., Inc*., 402 F.2d 241,245 (3d Cir. 1968)).  If review of cross-motions reveals no genuine issue of material fact, then judgment may be granted in favor of the party entitled to judgment in view of the law and undisputed facts.  *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998) (citation omitted).

### IV. Discussion[5]

The Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. Amend. 14. "The substantive component of the Due Process Clause limits what government may do regardless of the fairness of the procedures that it employs." *Steele v. Cicci,* 855 F.3d 494, 501 (3d Cir. 2017) (quoting *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 399 (3d Cir. 2000)). This "guarantee[s] protect[ion] against government power arbitrarily and oppressively exercised." *Steele*, 855 F.3d at 501 (quoting *Nunez v. Pachman*, 578 F.3d 228, 233 (3d Cir. 2009). To maintain a substantive due process claim, Plaintiff must establish that he has been deprived of a particular interest that "is protected by the substantive due process clause." *Steele*, 855 F.3d at 501.

For courts analyzing a procedural due process claim pursuant to the Fourteenth Amendment, "the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." *Shoats v. Horn,* 213 F.3d 140, 143 (3d Cir. 2000) (citing *Fuentes v. Shevin*, 407 U.S. 67 (1972)). Once a court determines "that the interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it." *Id.* (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). "The Supreme Court has repeatedly stated that '[t]he core of due process is the right to notice and a meaningful opportunity to

---

[5]    Defendants contend that Plaintiff was not incarcerated in the DOC as a pretrial detainee because he "was convicted of the charge underlying his probation." D's Br. at 11, n.5 (ECF No. 38). However, the undisputed summary judgment record reflects that Plaintiff was held in DOC custody on a detainer as an alleged out-of-state probation violator. He was never convicted of being a pobation violator. Thus, he is considered for purpose of this case a pretrial detainee. *See U.S. v. Dobson,* 585 U.S. 55, 59 (3d Cir. 1978) ("a parole violator is no different than a pretrial detainee who is merely awaiting trial and who, until conviction and sentencing, cannot commerce service of a term of imprisonment."); *Love v. Whitman*, No. 15-cv-1712, 2021 WL 253999, at *6 n.4 (W.D. Pa. Jan. 26, 2021); *Rosario v. Strawn*, No. CV 19-1040, 2020 WL 630975, at *6 (W.D. Pa. July 29, 2020), *report and recommendation adopted*, 2020 WL 5810009 (W.D. Pa. Sept. 3, 2020) (same).

be heard'." *Stevenson v. Carroll*, 495 F.3d 62, 69 (3d Cir. 2007) (quoting *LaChance v. Erickson*, 522 U.S. 262, 266 (1998)).

With these guidelines in mind, the Court will proceed to analyze each of Plaintiff's claims.

A.   Claims Regarding Housing Status

1.   *Substantive Due Process*

Plaintiff claims that his placement in the RHU for an extended period of time violated his substantive due process right to be free from punishment.  In *Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979), the Supreme Court established the principle that "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."  Under *Bell*,

> Detention officials' restrictions on pretrial detainees will constitute punishment prohibited by the Due Process Clause when: (1) "there is a showing of express intent to punish on the part of [those] [] officials"; (2) "the restriction or condition is not rationally related to a legitimate non-punitive government purpose,'"i.e., "if it is arbitrary or purposeless;" or (3) "the restriction is excessive in light of that purpose."

*Steele*, 855 F.3d at 505 (quoting *Stevenson*, 495 F.3d at 67-68) (quoting *Rapier*, 172 F.3d at 1005)). Here, Plaintiff argues that his incarceration in solitary confinement was severe and "excessive in light of the legitimate interests that Defendants allege motivated Plaintiff's classification" and that such deprivation was inflicted knowingly.  P's Br. at 3 (ECF No. 48). Further, he argues that his "placement in solitary confinement was apparently pursuant to official Department of Corrections policy, which is overseen by Defendant Wetzel, and the failure to provide Plaintiff with any process to address his placement in solitary custody was part of a pattern of behavior on the part of the Department." (ECF No. 13 at 5.)

Defendants respond that Plaintiff was placed in administrative custody pursuant to DC-ADM 802,[6] that his confinement did not constitute punishment as the deprivation was not "sufficiently serious," and that Defendants did not act with a culpable state of mind because the RHU assignment was "designed to protect both Plaintiff and other inmates given the lack of information regarding Plaintiff's past, . . . ."  Ds' Br. at 11 (ECF No. 38).

The Court finds that issues of material fact exist which a factfinder should decide regarding the severity of the treatment suffered by Plaintiff, the subjective intent of the Defendants with regard to the DOC policy regarding holding out-of-state parole and probation violators in administrative custody, and whether Plaintiff's confinement in the RHU was excessive in light of any legitimate interests relied upon by Defendants in placing out-of-state parole and probation violators in administrative custody.  For these reasons, Defendants' motion for summary judgment on Plaintiff's substantive due process claim regarding his housing assignment will be denied.

2.   Procedural Due Process

Defendants and Plaintiff have moved for summary judgment on this issue.  Under the procedural due process clause, "[a]lthough pretrial detainees do not have a liberty interest in being confined in the general population, they do have a liberty interest in not being detained indefinitely in [restricted housing] without explanation or review of their confinement." *Stevenson*, 495 F.3d at

---

[6]     DC-ADM 802 §1(B)(1)(h) states that "[a] Parole Violator (PV) . . . **shall be released to general population in accordance with Subsection B.2. below."** (emphasis in original). Subsection B.2. states that "**Temporary transfers shall not be confined in restricted housing solely on the basis of a temporary transfer status.  There must be additional supporting rationale that indicates the inmate is a risk, or at a risk, to release to general population.  Facilities shall place all temporary transfers in general population except when exigent circumstances exist (i.e. unsentenced, DC, out of state PV . . .   The initial reception committee in conjunction with the PRC, shall review DOC info for any such indicators to base their decision on placing the inmate in restricted housing or releasing to general population when received."** (emphasis in original). *See* ECF No. 37-9, at 9, Exh. H.

69.   Where, as here, a pretrial detainee is being held in administrative custody for "administrative" reasons as opposed to for disciplinary reasons, the quantity of process need not be extensive: prison officials must provide "only an explanation of the reason for their transfer as well as an opportunity to respond." *Id*. at 70 (citing *Hewitt v. Helms*, 459 U.S. 460, 474 (1983)).   To this end,

> [a]n inmate must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation.  Ordinarily, a written statement by the inmate will accomplish this purpose, although prison administrators may find it more useful to permit oral presentations in cases where they believe a written statement would be ineffective.  So long as this occurs, an the decisionmaker reviews the charges and then -available evidence against the prisoner, the Due Process Clause is satisfied.

*Hewitt*, 459 U.S. at 476.  While the process explained in *Hewitt* applies to sentenced inmates, it provides "a floor for what pretrial detainees may expect."  *Stevenson,* 495 F.3d at 69.

Plaintiff alleges that his Fourteenth Amendment procedural due process rights were violated when he was indefinitely detained in administrative segregation and was given no meaningful procedural protection because the periodic reviews of his custody status were merely perfunctory. Further, Plaintiff argues that there was "[n]o process available from which he could appeal to be transferred out of the RHU, nor could Bowman have been successful in such appeal had a process existed." P's Br. at 2 (ECF No. 40).

Defendants argue that (i) Plaintiff did not have a liberty interest in any particular housing assignment; (ii) that his housing status was explained to him on the day he arrived at SCI-Mercer; (iii) that his confinement was reviewed by the PRC on multiple occasions; and (iv) alternatively, even assuming he had a liberty interest of which he was deprived, he has not established that any injury he sustained "is directly attributable to his confinement in the RHU."  Defs' Br. at 5 (ECF No. 42).

The Court can easily find, based on the summary judgment record and the facts of this case, that Plaintiff's confinement in the RHU for approximately 295 days was sufficient to trigger the

procedural protections of the Due Process Clause, implicating a liberty interest within the contemplation of the Fourteenth Amendment. The question then becomes did the available process comport with all constitutional requirements.

Plaintiff testified during his deposition that by June of 2019 "it was totally pointless to meet with the [PRC]." Pl's Depo. 68:24-35. He testified as follows:

> Well, the main question I would ask was why am I being held in the RHU. If I am not a disciplinary problem, then why do I have no – why can't I go outside for yard, why can't I do this, why can't I do that, why don't I have a pillow. And the only response I would ever get is you're being held in the RHU until you're picked up by the Ohio authorities, you're not classified to be in general population.

*Id.* at 69: 10-18.

The Court finds that there is enough evidence in the summary judgment record from which a factfinder could find that Plaintiff was not provided a meaningful process under the Due Process Clause. *Sourbeer v. Robinson*, 791 F.2d 1094, 1102 (3d Cir. 1986) (holding that perfunctory reviews of a pretrial detainee's status in administrative custody supports a finding that the inmate was not provided a meaningful process under the Due Process Clause). Additionally, Defendant Superintendent Adams and Deputy Superintendent of Centralized Services Shane Thomas Dady both testified in their depositions "that no grievance process or request process available to Plaintiff could ever had result[ed] in anything other than a continuation of solitary confinement." Pl's Br. at 7-8 (*citing* Adams Depo. 8:24-9:3; Dady Depo. 6:19-7:1). Moreover, Deputy Superintendent Dady testified that despite Plaintiff being housed in administrative housing for over six months, the DOC never investigated or requested any information to determine if indicators existed which required Plaintiff's continued placement in administrative housing. Dady Depo. 11: 2-2-23.

With that said, however, the Court finds that there is no evidence in the summary judgment record reflecting that Defendant Wetzel had any personal involvement in determining Plaintiff's

housing status.  The same cannot be said of Defendant Adams though.  The summary judgment record evidence reflects that the PRC's recommendations that Plaintiff "remain AC status pending resolution with out of state parole authorities" were sent to Defendant Adams, who then approved Plaintiff's continued placement in the RHU. *See* 30 Day Review, signed by M. Adams on 9-27-2018 and 10-26-2018 (ECF Nos. 37-6 at 22, 29).

Based on the summary judgment record, the Court finds that while the DOC had policies and procedures in place which controlled the placement of out-of-state parole / probation violators, whether those policies and procedures were followed in a meaningful manner is disputed by the parties.  It is for the jury to decide whether Plaintiff received a process that comported with all constitutional requirements.  Summary judgment will be granted to Defendant Wetzel on Plaintiff's procedural due process claim based on his lack of personal involvement, but will be denied as to Defendant Adams.  For these same reasons, Plaintiff's motion for summary judgment also will be denied.  Plaintiff's procedural due process claim regarding his housing status will proceed only against Defendant Adams.

B.    *Claims Regarding Lack of Transportation to Court Hearings*

Plaintiff alleges that Defendants violated his due process rights by not transporting him to his preliminary hearings in Columbiana County, Ohio.  Defendants seek summary judgment on this claim arguing that the record "clearly demonstrates that the responsibility to transport Plaintiff to court hearings did not rest with the Corrections Defendants and that no action was taken by the Corrections Defendants to prevent or hinder Plaintiff's transportation."  Ds' Br. at 4 (ECF No. 38).  Plaintiff did not respond to this issue in his brief in opposition to Defendants' motion, but he did respond in his Response to Defendants' Statement of Material Facts. (ECF No. 46).

11

It is not disputed that on three occasions, SCI-Mercer released Plaintiff to the custody of transporting authorities (once to the Franklin City Police, and twice to the Venango County Sheriff's Department).  On each of these occasions, SCI-Mercer was in possession of a Transport Order issued by Judge Robert L. Boyer, of the Court of Common Pleas of Venango County, Pennsylvania.  (ECF No. 37-2 at 2, 7,12, 13, and 21-22).

It is also not disputed that DOC procedure for releasing an inmate to be transported to a court hearing requires that the records department receive official notification from the court and as long as the inmate was in the facility and there was a court notification, a transporting authority's request to transport an inmate would not be refused.  Plaintiff does not dispute the existence of the policy, but disputes that the policy was applied in his case.

Plaintiff contends that six probable cause hearings were scheduled in his probation violation case and he was not released by SCI-Mercer to the Columbiana County Sheriff for any of these hearings.  The summary judgment record contains one Order from the Court of Common Pleas of Columbiana County, Ohio, dated October 3, 2018, ordering the Sheriff of Columbiana County, Ohio to transport Plaintiff from SCI-Mercer to a hearing which was scheduled for October 19, 2018. (ECF No. 37-10 at 2; ECF No. 46-1 at 4 ). A docket entry on Plaintiff's Ohio criminal case docket states, "Return- Col Cty Sheriff – Notice of Hearing – Mark A. Bowman Failure of Service – Can Not be Transported until Jan. 2019 Sher."  (ECF No. 37-11 at 2; ECF No. 46-4). There is no record evidence that the records department at SCI-Mercer ever received the Transport Order of October 3, 2018.

The summary judgment record is undisputed that on the three occasions when SCI-Mercer received court Orders to make Plaintiff available for transport, it did so.[7]  There is no record evidence

---

[7]       The summary judgment record does reflect that SCI-Mercer completed Authority Temporary Absence forms for Plaintiff's temporary transfer to Venango County on June 3, 2019 (ECF No. 37-2

that Defendants ever prevented or hindered Plaintiff's transportation to his probable cause hearings in Columbiana County, Ohio. For these reasons, the Court will grant summary judgment to Defendants on Plaintiff's due process claim regarding failure to transport him for his court hearings.

      C.    *Claims Regarding Interference with Mail*

Plaintiff's final claim is that Defendants failed to deliver incoming mail addressed to him and failed to send outgoing mail sent by him to his attorney and other individuals.

Defendant Adams testified in her deposition that there was no reason inmates would not receive mail that had been sent to them as long as the mail met the department policy. Adams Depo. 14: 9-12. She also testified that that an inmate's outgoing mail would not be delivered out of the facility, other than it if lacked postage, in which case the mail would be returned to the inmate. *Id.* at 14: 12-17.

Plaintiff acknowledged in his deposition that he received mail while at SCI-Mercer, including letters from his attorney,  letters regarding his domestic relations matters in Butler County, and letters from his children, his ex-wife, his brother, his pastor, and a friend. Pl's Depo. 41:1-3; 42:4-8.  But he testified that he learned after his release from SCI-Mercer, that his ex-wife, his brother, and his friend had sent him letters and photos that he had never received. *Id.* at 44: 4-19; 45: 2-15. He testified that he did not think his family members or ex-wife had copies of the letter they sent, but that his friend may have copies has they were printed on a computer. *Id*. at 44: 22; 45:18-21.

Plaintiff also testified that the letters he received were addressed to Smart Communications and then forwarded to him. *Id*. at 46: 22-25. The summary judgment record contains a mail log of all the letters SCI-Mercer received for Plaintiff. (ECF No. 37-7 at 2-5). The summary judgment

---

at 1) and January 18, 2019 (ECF No. 37-2 at  9); and to Franklin City Police Dept. on September 5, 2018 (ECF No. 37-2 at 17).

record also contains a signed statement from the Mailroom Supervisor at SCI-Mercer stating that the letters received at SCI-Mercer for Plaintiff were printed and delivered to him.  (ECF No. 37-7 at 1).

Even assuming the complete truth of Plaintiff's deposition testimony, Plaintiff points to no evidence other than speculation and conjecture to establish that his mail was interfered with by Defendants or anyone at SCI-Mercer.[8]  It is axiomatic that a jury cannot be permitted to return a verdict based merely on speculation or conjecture. Summary judgment, therefore, will be granted on Plaintiff's due process claims regarding interference with his mail.

### V. Conclusion

For all these reasons, Defendants' motion for summary judgment (ECF No. 36) will be granted in part and denied in part as follows:

(1)      The motion will be denied on Plaintiff's substantive due process claims regarding his housing status;

(2)      The motion will be granted on Plaintiff's procedural due process claims regarding his housing status against Defendant Wetzel  based on lack of personal involvement;

(3)      The motion will be denied on Plaintiff's procedural due process claims regarding his housing status against Defendant Adams;

(4)      The motion will be granted on Plaintiff's due process claims regarding failure to transport him to court hearings;

(5)      The motion will be granted on Plaintiff's due process claims regarding interference with his mail.

---

[8]      The Court recognizes that the possibility exists that mail may not have been forwarded from Smart Communications to SCI-Mercer, but that issue was not explored by the parties and is not before the Court.

Plaintiff's motion for summary judgment (ECF No. 39) will be denied.

An appropriate order follows.

Dated:  December 6, 2021

BY THE COURT:

s/Cynthia Reed Eddy
Cynthia Reed Eddy
Chief United States Magistrate Judge

cc:      All Counsel of Record
         (via ECF electronic notification)